Clive Allen SEAL, Plaintiff/Appellee,

v.

Jill Annette Lambertz SEAL,
Defendant/Appellant.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Aug. 29, 1990.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 3, 1990.

James F. Arthur, III, McNeese & Arthur, Germantown, for defendant/appellant.

Richard Glassman, Glassman, Jeter, Edwards & Wade, P.C., Memphis, for plaintiff/appellee.

TOMLIN, Presiding Judge, Western Section.

Clive Allen Seal ("Husband") filed a petition in the Chancery Court of Shelby County for modification of a final divorce decree, seeking a reduction and/or termination of periodic alimony being paid to Wife. Wife filed a counter-petition by which she sought an increase in child support, the reduction to judgment of past due alimony, attorney fees and litigation expenses, and an order requiring Husband to give reasonable notice of his intention to exercise visitation rights. Following a bench trial, the trial court affirmed the action of the referee reducing Husband's alimony payments from $2,300 a month to $1,800 a month for six successive months and a further reduction thereafter to $1,300 a month. In addition, the trial court: (1) reversed the referee's ruling increasing child support from $1,000 a month to $1,250 a month, reinstating the previous order; (2) ordered Husband to pay the alimony arrearage of $3,300 at a rate of either $200 per month beginning June 15, 1989, with interest at the rate of ten percent per annum until paid in full, or to pay Wife the full amount within thirty days of entry of the order; (3) ordered Husband to give Wife thirty-six hours' advance notice of his intention to exercise his visitation rights; and (4) denied Wife's request for attorney fees and costs. For the reasons hereafter stated, we affirm in part, modify in part, and reverse in part.

Since the parties' divorce some six years ago, this is the second petition filed by Husband seeking judicial relief from periodic alimony payments on the ground of changed circumstances. A full and complete history of this litigation is found in the earlier opinion of this Court reported as *Seal v. Seal*, 726 S.W.2d 934 (Tenn.App. 1986). We will refer to our former opinion

from time to time in this opinion, identifying it as *"Seal I"*.

Husband was granted a divorce from Wife on the ground of irreconcilable differences in January, 1984. Both parties were represented by counsel in the divorce proceedings. A Property Settlement and Child Custody Agreement ("PSA") was entered into by Husband and Wife which provided, among other things, that Wife would have custody of the parties' two minor children, with Husband having reasonable visitation rights. The PSA also provided that Husband would pay Wife $2,300 per month as periodic alimony and $1,000 per month as child support. The PSA was approved by the chancellor and incorporated into the final decree.

Husband filed his initial petition some ten months following the entry of the final decree of divorce, seeking a modification of periodic alimony payments on the ground that Wife refused to seek employment. He maintained then that this action (or inaction) on her part amounted to a material change of circumstances entitling him to relief. The chancellor granted Husband relief, reducing alimony payments by $1,000 monthly in two $500 increments. In *Seal I,* this Court reversed, holding that Wife's failure to seek gainful employment did not constitute a change of circumstances so as to justify a reduction of periodic alimony payments. In so doing we stated:

> While it is conceded that Wife, who was given custody of the parties' minor children, had not sought employment in the ten-month period between the date of the final decree and the filing of the petition to modify, it is also conceded that Wife was not employed at the time of the divorce, nor had she been employed for some three years prior to the divorce. Neither Husband nor his counsel caused language to be inserted in the property settlement agreement mandating that she immediately leave the home and seek employment. We are of the opinion that the cases and the Code as presently written mandate that the changes sought to be relied upon to effectuate a modification of alimony pay-

ments must be shown to have occurred *since* the entry of the decree ordering the payment of alimony. Clearly, Husband not only has failed to show this but concedes as well that no changed circumstances have occurred to support his request for relief from the alimony payments provided for in the divorce decree.

*Seal v. Seal,* 726 S.W.2d 934, 935 (Tenn. App.1986).

As a result of the chancellor's decree following the initial petition for a reduction, Husband reduced his alimony payments accordingly. Our reversal of the chancellor in *Seal I* placed Husband in arrears. Since March 1987, Husband has paid Wife $100 per month in addition to the original decreed alimony of $2,300.

In March, 1988, Husband filed a second petition in the chancery court seeking to have that court reduce and/or terminate the alimony payments. Husband alleged in his petition that there had been a change of circumstances such as would warrant this action, and further alleged that Wife had been rehabilitated and was no longer in need of alimony from Husband. Wife filed a counter-petition seeking an increase in child support, an order requiring reasonable notice from Husband to exercise his visitation rights, and the chancellor's reducing to judgment the arrearage and alimony that had built up since the entry of judgment in *Seal I.* The chancellor's action in this regard, as noted earlier, resulted in this appeal. Inasmuch as the chancellor below tried this case without the intervention of a jury, we are to review the record *de novo* on appeal with all findings of the trial court presumed to be correct. Absent an error of law, unless the evidence preponderates against these findings, we must affirm. Rule 13(d), T.R.A.P.

## I. REDUCTION IN ALIMONY

In *Seal I,* the chancellor granted Husband's petition to reduce the monthly alimony award by ordering a reduction of $500 a month for six successive months and thereafter an additional $500 per month, citing "changed circumstances"—

i.e., the alleged refusal of Wife to seek gainful employment. Upon reading the decree of the chancellor relative to this issue in the case before us, which we will call "*Seal II*," one may exclaim "deja vu" but for the flip-side reason.

Reversed by this Court in *Seal I*, the chancellor has again ordered a thousand-dollar reduction in Husband's alimony payments, to be executed in two steps over a six-month period, on the ground of "changed circumstances." However, this time the reduction is based not on Wife's refusal to seek gainful employment, but it is because she has in fact sought and obtained gainful employment. At the time of the last hearing, she was employed as a travel agent, earning a net annual income of $15,780. This is the primary basis cited by the chancellor as a "definite change of circumstances." While the chancellor noted that Wife was also receiving investment income of approximately $6,500 a year, it is clear from reading his remarks from the bench that the linchpin of his decision was the fact that Wife was now gainfully employed.

T.C.A. § 36–5–101(a)(1) provides in part that following an order by the court decreeing support and maintenance of one spouse by another, "on application of either party, the court may decree an increase or decrease of such allowance only upon a showing of a substantial and material change of circumstances." In *Seal I*, this Court stated that "[w]e are of the opinion that the cases and the Code as presently written mandate that the changes sought to be relied upon to effectuate a modification of alimony payments must be shown to have occurred *since* the entry of the decree ordering the payment of alimony." *Id.* at 935. Therefore, this Court must look only to the evidence of events that have occurred between the date of the hearing in *Seal I*—December, 1985—and the most recent hearing in June, 1989.

Changes in circumstances are not material if such changes were contemplated by the parties at the time they entered into the alimony and support agreement. *Jones v. Jones*, 784 S.W.2d 349, 353 (Tenn.App.1989). In addition, the party seeking a modification in alimony or child support has the burden to show such change in circumstances to warrant a modification of the prior decree. *Azbill v. Azbill*, 661 S.W.2d 682 (Tenn.App.1983).

The factors set forth in T.C.A. § 36–5–101 applicable to the initial grant of support and maintenance where relevant must be taken into consideration in arriving at a determination of whether there has been a change in circumstances to require a modification of support and maintenance. *Threadgill v. Threadgill*, 740 S.W.2d 419, 422 (Tenn.App.1987).

The record reflects that Husband's financial circumstances have changed but little. At the time of the prior hearing he was earning $164,000; at the time of the second hearing, $156,000. His concession that he had the ability to pay any reasonable increase in child support ordered by the court would certainly support the conclusion that he has the ability to pay the alimony award in the initial decree. Therefore, if there are "changed circumstances" regarding alimony, such changed circumstances must be with reference to Wife. At the time of the divorce Wife was not employed. At the time of the first hearing in late 1985 she was not employed. At the time of the second hearing, however, in June, 1989, Wife was earning a net monthly income of $1,315. This is the crux of the argument of "changed circumstances" made by Husband. This fact alone does not warrant a reduction in the Husband's alimony obligation. *See Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn.App. 1987) (periodic alimony not reduced where Wife was unemployed at the time of alimony award and was making $19,000 per year at the time of hearing for modification of alimony); *Dodd v. Dodd*, 737 S.W.2d 286 (Tenn.App.1987) (periodic alimony not reduced where Wife completed her training as a registered nurse and was employed); *Jones v. Jones*, 784 S.W.2d 349 (Tenn.App. 1989); *Sumner v. Sumner*, 11 T.A.M. 30–20, 1986 WL 6613 (June 13, 1986); *Wright v. Wright*, 1990 WL 84032 (Tenn.App. at Nashville, June 22, 1990).

Furthermore, Husband has not introduced any evidence to show that at the time the parties entered into the PSA it was unanticipated or unforeseen that Wife would become gainfully employed, or that the PSA was based on a presumption that Wife would not seek to better herself and her family by seeking employment. As an aside, the Court would note that the position taken by Husband is seemingly contradictory for the reason that in *Seal I* he sought a reduction in the same alimony because Wife had *not* gone out and sought employment.

As to this catch 22 situation in which Husband placed himself, Wife makes a strong argument for reversal on the basis of estoppel. As strong as it might be, we feel disinclined to reverse the trial court on a legal technicality in light of the failure of Husband to carry his requisite burden of proof.

The last factor to be considered is the standard of living of the parties established during the marriage, as noted in § 36–5–101(d)(8) (Supp.1989).

In *Duncan v. Duncan*, 686 S.W.2d 568 (Tenn.App.1984), now Presiding Judge Todd stated:

> § 36–5–101 requires that an amount of income be ascertained which will provide for the wife to live in the manner to which she became accustomed during the marriage. From this amount should be subtracted her reasonably anticipated income from her own endeavors and from her property.... The result of the subtraction will be the amount by which the Husband is obligated to supplement the income of his wife to the extent of his ability....

*Id.* at 572.

The record in this case indicates that the parties enjoyed an extremely high standard of living when they were married and Husband was earning up to $164,000 a year. There is no evidence in this record to indicate that Wife is now able to enjoy a higher standard of living as a divorced parent raising two children, one a teenager.

■ Husband secondarily contends that Wife's income from investments made subsequent to the divorce should also be considered as a "material change" in circumstances so as to warrant a modification of an alimony award. The record reflects that under the PSA, Wife received the marital home, two residential lots, and one thousand shares of Federal Express stock. Inasmuch as the marital home was too expensive for Wife to maintain, she sold it and bought a smaller house. This was in no way challenged and was obviously an act of frugality on the part of Wife. Any income produced from the proceeds of the sale of the parties' marital home awarded to a spouse in the division of marital property should not be a factor in determining whether or not a change of circumstances existed that warranted a modification of periodic alimony payments. *See Claiborne v. Claiborne*, 1988 WL 5684 (Tenn.App. at Knoxville, Jan. 29, 1988)

■ Wife also received annual dividends from the 1,000 shares of Federal Express stock. From a reading of T.C.A. § 36–5–101 it may be presumed that property received by an alimony recipient in the division of marital property might produce income. Absent the Husband's establishing that this income was unanticipated or unforeseen, any dividend or interest income earned by an alimony recipient from stocks or bonds received under a property settlement agreement should not be considered as a factor constituting a substantial and material change in circumstances to support a reduction in alimony payments. We are of the opinion that the trial court abused its discretion in reducing Husband's alimony obligation.

## II. CHILD SUPPORT

■ In the PSA entered into in 1984, Husband agreed to pay Wife as child support for the parties' two minor children, then ages nine and six, the sum of $1,000 a month. As a result of Wife's counter-petition for increased child support in the present litigation, the divorce referee awarded an increase of $250 monthly. This increase was reversed by the chancel-

lor. At the time of the hearing below in this present litigation, the parties' daughter was fourteen years of age, the son, eleven. Wife testified that the cost of supporting the children had increased since 1985. According to Wife, clothing the children has become costlier. In addition, she now incurs expenses for her daughter's cheerleading activities—camps and uniforms. Wife testified that she has additional expenses for her son, such as chess trips and church and basketball camps. These expenses did not exist when Wife last sought an increase in child support.

Husband testified that he was aware that it cost more to clothe the children now than it did at the time of the divorce. He conceded that the children now participate in various activities in which they were not involved when the divorce took place, increasing their expenses by at least $250 per month.

Admittedly, Wife's ability to contribute to the support of the parties' children has increased somewhat in light of her net annual earnings of approximately $16,000 a year. However, Wife alone is not required to bear the increase in the children's expenses. As parents, Husband and Wife are required by law to jointly support their children. T.C.A. § 34-1-101 (Supp.1989). It has been stipulated that Husband had the ability to pay any reasonable amount of child support awarded. In light of the above, we are of the opinion that the chancellor abused his discretion in reversing the ruling of the divorce referee which awarded Wife increased child support in the amount of $250.

## III. ALIMONY ARREARAGE

■ Wife contends that the trial court abused its discretion in failing to award her a judgment for immediate payment in full of the amount of alimony in arrears, with interest. This arrearage did not arise because of the inability of Husband to pay. At the time of the divorce Husband was earning $164,000 as a pilot for Federal Express. At the time of the hearing below, Husband was still employed as a Federal Express pilot, but he was earning $156,000

per year. Therefore, the question of his ability to pay is not before us.

The arrearage was created in this manner: Following a hearing on Husband's initial petition for modification filed in late 1984, the chancellor reduced the monthly alimony award by $500 per month beginning April 1, 1986 and by an additional $500 per month beginning October 1, 1986. Husband availed himself of these reductions until the judgment of this Court reversing the decree of the chancellor became final in March 1987.

It was agreed that at that time the total arrearage amounted to $6,000. Since March 1987, in addition to paying the periodic alimony called for by the PSA, Husband has reduced the arrearage at the rate of $100 per month. Wife had never demanded that Husband pay the arrearage in full or that he pay larger amounts until Husband filed the petition to modify that created this litigation. At the time of the hearing below it was agreed that the arrearage totaled $3,300. The trial court ordered this amount paid at the rate of $200 per month, beginning June 15, 1989, with interest at the rate of ten percent *per annum* or, in the alternative, Husband could pay the total arrearage in full, without interest, if paid within thirty days following the entry of the trial court's order. Under the circumstances, we cannot say that this action by the trial court constituted an abuse of discretion.

## IV. NOTICE OF EXERCISING VISITATION RIGHTS

■ The PSA entered into by the parties provided that Husband was to have reasonable visitation privileges with the parties' two minor children, who were placed in the custody of Wife. Under this broad language the parties fashioned a flexible visitation schedule, primarily to accommodate the work schedule of Husband. The proof revealed that Husband's flight schedule was published approximately one month in advance. Accordingly, Husband was aware a month in advance when his weekends would be occupied. The parties would

then work out visitation days in keeping with Husband's work schedule.

While Wife was not employed and while the children were younger and involved in fewer activities, this presented no problems. Now, as previously noted, the children are involved in more extra-curricular activities, and as they grow older they will likely be involved even more. In order for her to formulate her business and social plans and to formulate plans for the children, Wife asked the court to require Husband to give her one month's notice as to when he desired to exercise visitation with the children on weekends or visits of two days or more. Husband's counsel suggested that a forty-eight-hour notice should be sufficient, but the chancellor fashioned a "compromise" by reducing the time of notice to thirty-six hours.

Husband concedes that his flight schedule is issued in advance on a monthly basis, but that the schedule that he actually flies from month to month seldom resembles the schedule issued for him by the company. By way of explanation, Husband stated that he was constantly "trip trading" with other pilots to be able to take more valuable trips that would earn him more money.

After reviewing the record, we are of the opinion that the type of notice being sought by Wife does not appear to be either impossible or unreasonable. Husband is to be commended in some degree for his efforts to increase his income by modifying his flight schedule. However, we are of the opinion that Wife is entitled to reasonable notice to permit her to make plans with and for her children. She should not be required to cancel or modify those plans on a virtual moment's notice in order to provide visitation. While a one month's notice might be inappropriate, we think the forty-eight-hour notice suggested by the chancellor is unreasonable and amounts to an abuse of his discretion. Accordingly, we modify this holding of the chancellor and find that Wife is entitled to a one week's advance notice of Husband's intent to exercise his visitation rights with the children for a weekend or extended visits of two days or more.

## V. ATTORNEY FEES

Wife contends that she is entitled to an award of attorney fees in connection with both the trial below and on appeal. The decision to award attorney fees in divorce actions rests in the discretion of the trial judge. *Threadgill v. Threadgill*, 740 S.W.2d 419 (Tenn.App.1987); *Batson v. Batson*, 769 S.W.2d 849 (Tenn.App.1988). On appeal, this Court will not interfere with the trial court's decision to award attorney fees absent a showing of an abuse of discretion. *Threadgill, supra*, at 426. If the Wife has adequate funds for her needs as well as the payment of her attorney fees, an award of attorney fees is not required. *Franklin v. Franklin*, 746 S.W.2d 715 (Tenn.App.1987); *Ingram v. Ingram*, 721 S.W.2d 262 (Tenn.App.1986).

No doubt one basis for the trial court's action in denying Wife's request for attorney fees was the fact that the ruling of the chancellor on each and every issue presented to him was in essence in favor of Husband and against Wife. With the exception of the reduction to judgment of the alimony arrearage, which we consider a minor issue under the circumstances, this Court is reversing the action of the trial court in each and every respect.

In the case at bar, the Wife has had to fend off two legal broadsides fired by Husband in a period of three and a half years seeking to substantially reduce his financial obligations to her. In the first of these, *Seal I*, we found that Husband not only had failed to show no changed circumstances that would support his request for relief, but also conceded that none had occurred since the entry of the decree ordering the payment of alimony.

Now, in *Seal II*, Husband again seeks relief from the alimony payments ordered in the divorce decree using the converse of the theory upon which he sought relief in *Seal I*. We have found that Husband has failed to carry the burden of proof required of him to obtain the relief sought in this case as well.

In essence, there have been no substantial changes in material circumstances since the entry of the divorce decree incorporating the provisions of the PSA entered into by and between the parties. While we would not deem *Seal II* to be frivolous, the basis of this present litigation is certainly rendered less substantial in light of our opinion in *Seal I* and in light of existing case law in this state on this subject.

As stated so aptly by counsel for Wife, she should not have to pay the cost of defending her entitlement to alimony and child support payments. Neither should she be required to pay such cost from her employment income, which, when combined with the support payments, still does not provide the standard of living to which she was accustomed during the parties' marriage. Under the circumstances, we are of the opinion that Wife does not have adequate funds from this income with which to pay a substantial portion of her attorney fees. It is our considered opinion that Husband should bear seventy-five percent of these expenses. Accordingly, we reverse the chancellor's decision as to this issue.

At the hearing below Wife testified without contradiction that she had incurred attorney fees in the instant proceeding through May, 1989 in the amount of $3,700 and litigation expenses in the amount of $700, for a total of $4,400. As for Wife's request for attorney fees on appeal, ordinarily we would remand this issue back to the trial court for a final determination. However, this Court takes judicial notice of the fact that the chancellor who tried both *Seal I* and *Seal II* has been replaced as a result of the August 2nd election. A new chancellor will assume his duties on September 1, 1990. In our opinion, it would be an unjust burden to refer this case back to a new chancellor to establish attorney fees because of his total lack of familiarity with the case.

This Court has before it evidence in the form of an affidavit from Wife's counsel indicating his actual fees and expenses incurred by Wife from May 31, 1989 to and including the date of argument before this Court. The affidavit is unopposed. There-fore, in the exercise of our inherent equitable powers, this Court will dispose of this issue.

The affidavit of Wife's counsel indicates total charges for services rendered during the post-trial period of $9,850; photocopying expenses, $72.14; and court reporter charges for depositions and copies of transcripts in the amount of $461.80. These amounts added to the expenses incurred earlier by Wife amount to $14,783.94. Seventy-five percent of this total amounts to $11,087.95. This portion of Wife's attorney fees and related expenses is to be paid by Husband.

The decree of the trial court reducing Husband's alimony obligation is reversed. The chancellor's decree denying an increase in child support is reversed. Wife is awarded additional child support in the amount of $250 per month. The action of the chancellor refusing to award Wife a judgment for the full payment of the alimony arrearage is affirmed. As to notice of exercise of visitation rights by Husband, he is required to give Wife one week's notice rather than thirty-six hours. Finally, Husband is ordered and directed to pay seventy-five percent of Wife's attorney fees and related expenses involving both the hearing below and the appeal. Costs in this cause in both the trial court and on appeal are taxed to Husband, for which execution may issue, if necessary. This cause is remanded to the Chancery Court of Shelby County for the enforcement of this judgment in accordance with the terms and provisions of this opinion.

CRAWFORD and HIGHERS, JJ., concur.