SHANNON RENEE THOMPSON,  )
                         )
        Plaintiff/Appellee,   )          Appeal No.
                         )          01-A-01-9712-CV-00695
v.                       )
                         )          Sumner Circuit
BRAD KENT THOMPSON,      )          No.  13822-C
                         )
        Defendant/Appellant.  )
                         )

FILED

October 27, 1998

Cecil W. Crowson
Appellate Court Clerk


COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY

AT GALLATIN, TENNESSEE


THE HONORABLE THOMAS GOODALL, JUDGE



DENNIS W. POWERS
McClellan, Powers, Ehmling & Dix
116 Public Square
Gallatin, Tennessee  37066
        ATTORNEY FOR PLAINTIFF/APPELLEE


F. DULIN KELLY
ANDY L. ALLMAN
Kelly & Kelly
629 East Main Street
Hendersonville, Tennessee  37075
        ATTORNEYS FOR DEFENDANT/APPELLANT




REVERSED IN PART,
AND REMANDED



WILLIAM B. CAIN, JUDGE

# OPINION

The parties are the parents of two minor children whose custody is at issue in this post-divorce proceeding. The trial court modified the joint legal and physical custody arrangement delineated in the parties' Marital Dissolution Agreement resulting in the Mother being awarded primary care and control of the children. The Father now appeals the court's decision to modify custody as well as its decision to award the Mother part of her attorney fees. We reverse the decision of the court below both with regard to custody and attorney fees. Furthermore, we remand to the trial court the issue of whether the child support paid to the Mother need be increased.

## I. FACTS AND PROCEDURAL HISTORY

Shannon Renee Gupton Thompson ("the Mother") and Barry Kent Thompson ("the Father") were divorced by final decree entered July 18, 1995. The final decree incorporated a marital dissolution agreement (MDA) which provided that the parties "share joint legal and physical custody of their minor children," Zachary (born October 15, 1991) and Whitney (born September 7, 1993), with neither party being designated as the primary legal custodian. Pursuant to the MDA, the Father had physical custody of the children every other week from Wednesday at 5:00 p.m. until Sunday at 6:00 p.m. and the Mother had physical custody from 6:00 p.m. on Sunday until 5:00 p.m. on Wednesday. On the alternating weeks, the Father would have the children from Wednesday at 5:00 p.m. until Friday morning when he returned them to day care and the Mother would have them from Friday afternoon when she picked them up from day care until Wednesday at 5:00 p.m. The parties alternated major holidays with their children and each had two full weeks free of the other's custody in the summers.

Regarding child support, the MDA provided that the Father was to pay $460 per month to the Mother and that the parties "would review such child support payment periodically and make adjustments as they agree need to be made." The Father was to maintain health insurance on the children and the parties were to each pay half of the reasonable medical expenses and deductibles.

At the time of the September 1997 hearing, the Father continued to live in the marital residence, and the Mother lived approximately one mile away. By this time, the parties had been functioning under the custody arrangement outlined in the MDA for over two years.

The problems in this case seemed to have begun when, by letter dated October 4, 1996, the Mother requested that the Father increase child support to $730 per month. The Father stated that when he asked what the increase was for, the Mother responded that it was for "toilet paper and groceries." After the Father denied the Mother's requests for increased support, the Mother filed her "Petition for an Increase of Child Support and Amended Visitation Schedule" on November 5, 1996. The court suggested in a subsequent order that the Mother amend her Petition in order to make allegations with regard to the need for a "primary custodial parent" as there was no such designation in the final decree.

The Mother filed an Amended Motion on August 11, 1997 asking the court to order that Zachary be enrolled in the elementary school zoned for the Mother's residence. On August 26, 1997, the court ordered instead that Zachary be enrolled in the school that was zoned for the Father's residence. On September 23, 1997, the Mother again amended her petition as suggested by the Court asking the court to award her primary physical custody of the children and to establish a specific drop-off and pick-up time for visitation.

At the September 30, 1997 hearing, the Mother testified that she made $1710 per month working at the Tennessee School Board Association. She testified that the children were in day care at La Petite Academy which costs $543.40 per month and for which she was financially responsible. The Father testified that he owned a business. He agreed that he had paid the Mother $460 per month since the time of the divorce. He said that in addition, he carried the children's health insurance. He affirmed that, at the time the Mother requested an increase in support, he had $43,000 in savings and that at the time of the hearing, he had at least $20,000.

The Mother stated that she could only think of one substantial change

in circumstances since 1995 when the parties agreed to share custody which was that Zachary, her oldest child, had started school. When the Mother was questioned regarding her concern about the feasibility of joint custody with her son in school, she gave the following testimony:

> I just have a fear for when he gets a little older that -- I mean, I can see him, "Well, no, Teacher, I don't have my homework. I was at my dad's last night and I was at my mom' this night, so it's at my dad's, and I don't have my book because I left it here." I can see something like that happening, and I just think it is a real strain on him to be in one place one night or two nights and then another place two other nights.

The Mother did confirm that she and the Father live a mile apart and that Zachary's school is a little more than a mile from her residence and a half of mile from the Father's residence. She testified that the parties had been able to work out holiday visitation without problems under the prior custody arrangement. She said that she could only remember once in the past where the parties had re-arranged their scheduled time with the children.

When asked why she had asked for primary care of the children, the Mother replied that "there is nothing like the nurturing of the mother . . . and [she] just fe[lt] that [she was] the one that, the majority of the time, takes them to the doctor, and [she] cook[s] for them when [she] ha[s] them, and [she] just feel[s] that [she] can take care of them like a mother should." The Mother did agree that the Father is a good parent and that he had done a good job providing for the children both financially and emotionally.

When the Father was asked what problems they had experienced with the current custody arrangement, he made the following statement: "I don't see any problems at all. It's going very smoothly. The children know, you know, when, you know, my daddy comes and picks me up. They know exactly who is coming to get them, and you know, it goes over fine." Later, in response to a question from the bench, the Father stated that the actual weekly exchange of the children was also working out well. However, he had, at an earlier deposition, given several reasons why the Mother should not be the primary care giver. He had stated that he felt that the children were in a more stable environment with

him and at his home, that the Mother had moved three times since the divorce, and that the Mother did not give adequate attention to the children's extra-curricular activities.

In its final order, the trial court found that there had been a sufficient change of circumstances since the entry of the final decree to modify custody such that, while the parties shall retain joint custody, the Mother is to have primary care and control of the children. The Court's order awarded the Father visitation every other weekend and provided for nightly phone visitation. Based upon the Father's 1996 tax return showing income of $85,000 plus additional income by way of depreciation deductions, the court set child support at $1,492 per month. The court stated its finding that, at the time the Mother made the request for additional child support, the Father had $40,000 in savings. However, it was the court's position that based on the shared custody arrangement at that time, the child support payments need not be retroactive. Rather, they should begin on November 1, 1997. Furthermore, the court found that since the Father had in excess of $20,000 in the bank at the time of the hearing, the Mother should not be responsible for all of her attorney fees. Thus, the court ordered the Father to pay $3000 of the attorney fees incurred by the Mother.

## II. STANDARD OF REVIEW

Appellate review of custody cases is de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). In cases where the issue is modification of custody, the burden is on the non-custodial parent to prove changed circumstances. *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991).

## III. CUSTODY

On appeal, the Father first asserts that the trial court erred in finding that there was a material change in circumstances warranting a change of custody. Even if there were a material change, it is the Father's position that he is the proper parent to have primary care and control of the children. Because we agree with the Father that there was no change of circumstances warranting a change of custody, we find it unnecessary to address the question of which parent is more fit.

The law is well settled that "where a decree has been entered awarding custody of children, that decree is res adjudicata [sic] and is conclusive in a subsequent application to change custody unless some new fact has occurred which has altered the circumstances in a material way so that the welfare of the child requires a change in custody." *Nichols*, 792 S.W.2d at 715-16 (citing *Dodd v. Dodd*, 737 S.W.2d 286, 290 (Tenn. Ct. App.1987)). This court has discussed "changed circumstances" as follows:

> This decision [regarding custody] is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child.

*Wall v. Wall*, 907 S.W.2d 829, 834 (Tenn. Ct. App. 1995).

The statutory standard for modifying child custody is embodied in section 36-6-101 of the Tennessee Code and provides for "modification as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a) (Supp.1998). Our supreme court has defined "exigencies" under the statute as follows:

> facts and conditions which have emerged since the decree, new facts and changed conditions which were not determined and could not be anticipated by the decree; and that the decree is final and conclusive upon all the facts and conditions which existed and upon which the decree was made.

*Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn. 1975); *see also McDaniel v. McDaniel*, 743 S.W.2d 167, 168 (Tenn. Ct. App. 1987). In other words, as articulated by this court in the case of a party's attempt to modify an alimony agreement, "[c]hanges in circumstances are not material if such changes were contemplated by the parties at the time they entered into the alimony and support agreement." *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990).

To reiterate, the trial court found that there has been a "sufficient change of circumstances" and modified custody such that, while the parties retained joint custody, the Mother was awarded primary care and control of the minor children. After a careful review of the record, we find that the record in this case does not support a conclusion that there has been a change of circumstances which warrants the change of physical custody of the children. At the hearing, the Mother testified that she knew of only one changed circumstance which was that the oldest child Zachary had started school. While the Mother speculated that this might in the future pose a logistical problem for the child regarding his ability to keep up with his books and homework, there was neither allegation nor proof that the child was having problems with school due to the custody arrangement. Indeed, the evidence was that Zachary's school was just over a mile from the Mother's residence and a half of mile from the Father's. Moreover, at the time that they entered the joint physical custody agreement, the parties certainly contemplated the fact that Zachary would start school when he reached the appropriate age, thereby precluding this change of circumstance from, in and of itself, justifying a change of custody. *See Smith v. Haase*, 521 S.W.2d at 50; *Seal*, 802 S.W.2d at 620.

Our courts have held that the mere fact that joint custody is not working and is adversely affecting children may be a change of circumstance which justifies modifying custody. *See, e.g., Rubin v. Kirshner*, 948 S.W.2d 742, 745 (Tenn. Ct. App. 1997). However, the facts in this case simply do no show that the joint custody agreement was not working for these parties. Both parties testified that there have been few problems with the joint physical custody arrangement including exchanging the children from one home to the other and scheduling holiday visitation. The Mother remembered only one time in which

the parties had needed to re-arrange the custody schedule. The Father commented that the children were well-adjusted to the arrangement and always knew which parent was coming to pick them up from day care.

It may be the better practice to specifically provide in an MDA for a primary physical custodial parent. Such was not done in this case and by approving the MDA in the Final Decree of Divorce, the trial court approved the pure joint custody arrangement.

The Mother asserts that since the trial court's order retained joint legal custody, the court did not actually modify custody in this case. The Mother claims she already had more responsibility for the children under the MDA and thus the court's award to her of primary care of the children was not a material change. Custody has both a legal and a physical aspect. *See Ford v. Ford*, No. CA 1123, 1987 WL 28394 (Tenn. Ct. App. 1987) (distinguishing between physical and legal custody in a case where the appellant only appealed the issue of physical custody). When section 36-6-101(a)(1) of the code provides for "modification [of a custody decree] as the exigencies of the case may require," it is referring to the preceding statutory language indicating a decree reflecting the court's award of "the care, custody and control" of minor children. Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 1998). It is indisputable that the arrangement for physical custody or "care" of the children to which the parties had agreed in their MDA was greatly altered by the court's order. The Father went from spending almost half of his time with the children to spending every other weekend with them. We therefore reject the Mother's contention that custody was not modified by the trial court's final order.

In conclusion, we find that the trial court's order modified the custody arrangement to which the parties had agreed in their MDA. We hold that the evidence preponderates against a finding that, since the time that the parties entered their agreement, circumstances have changed such that custody need be modified to prevent substantial harm to the children. Since the proof was that the parties' prior custody arrangement was working well, we reinstate the custody arrangement as set out in the MDA and incorporated by the final decree.

# IV. ATTORNEY FEES

Lastly we turn to the trial court's award of attorney fees. As stated, following the court's assertion that it found that the Father had in excess of $20,000 in the bank at the time of the hearing, it concluded that the Mother should not be responsible for all of her attorney fees. The court then ordered the Father to pay $3000 of the Mother's attorney fees.

Tennessee Code Annotated § 36-5-103 governs the award of attorney fees in cases involving alimony, child support and custody. That statute provides as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (Supp. 1998). The statute by its language limits the trial court's discretion to award attorney fees to "the spouse . . . to whom the custody of the child, or children, is awarded." *Id.* Indeed, this court has stated that "[t]his statute authorizes an award of attorney's fees to a party who successfully pursues or defends a change of custody petition." *Bjork v. Bjork*, No. 01A01-9702-CV-00087, 1997 WL 653917, at *7 (Tenn. Ct. App. 1997) (citing *D v. K*, 917 S.W.2d 682, 686 (Tenn. Ct. App. 1995)). Other opinions have held that section 36-5-103 entitles only the "prevailing" party to attorney fees. *Brewer v. Weibel*, Nos. 02A01-9703-CH-00067, D14591-1, 1998 WL 158779, at *2 (Tenn. Ct. App. 1998) (reversing the trial court's award of attorney fees to the mother in a case where the father had successfully sought a change of custody from the mother to him); *see also Wallace v. Wallace*, No. 02A01-9702-CH-00029, 1998 WL 74256, at *6-7 (Tenn. Ct. App. 1998).

Based on the statute itself and the foregoing case law and based on this

court's conclusion that there were not changed circumstances to support a change of custody, we find that section 36-5-103(c) does not authorize an award of attorney fees to the Mother. We therefore reverse the trial court's decision to award the Mother $3000 of her attorney fees and we reject her assertion that she should be awarded any of the expenses of this appeal. Although we recognize the financial inequality of the parties, this fact can be considered with regard to child support. *See* Tenn. Code Ann. § 36-5-101(d) (Supp. 1998). Under the parties' MDA, the Father was paying only $460 per month to the Mother and the Mother was completely responsible for the cost of day care which was over $500. The MDA envisioned changed economic circumstances and assumed future agreements between the parties. Agreement on child support was not forthcoming and the Mother petitioned for an increase. In view of the action of this court relative to the custody and attorney fee issues, this case is remanded to the trial court for further consideration of the Mother's November 1996 petition for increased child support.

## V. CONCLUSION

For the foregoing reasons, we reverse the trial court's modification of custody as well as its award of attorney fees to the Mother. We remand this cause to the Sumner County Circuit Court for determination of the issue of whether the child support paid by the Father to the Mother should be increased. Tax the costs on appeal to the parties equally.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.


_____
WILLIAM C. KOCH, JR., JUDGE