# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
October 8, 2002 Session

## BETTY R. BROWN  v. MELVIN E. BROWN

**Appeal from the Circuit Court for Davidson County**
**No. 92D-1857      Marietta Shipley, Judge**

---

**No. M2002-00728-COA-R3-CV - Filed December 31, 2002**

---

The trial court granted the wife a divorce after a marriage of twenty-five years, and ordered the husband to pay her $300 per month as alimony in futuro.  Eight years later, the husband filed a Petition to Modify the Final Decree and eliminate the alimony obligation, citing a significant increase in the wife's earnings.  The trial court denied the petition.  We affirm the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and TOM E. GRAY, SP. J., joined.

David E. Danner, Nashville, Tennessee, for the appellant, Melvin Eugene Brown.

James L. Curtis, Nashville, Tennessee, for the appellee, Betty Ruth Brown.

### OPINION

### I. DIVORCE AND ALIMONY

Betty Ruth Brown filed a complaint for divorce from her husband Melvin in 1993, after a marriage of twenty-five years and several lengthy separations.  At the time of divorce, Ms. Brown, a registered nurse, was receiving disability pay because of a job-related injury.  The trial court granted her the divorce on the ground of the husband's inappropriate marital conduct, divided the marital property, and ordered Mr. Brown to pay his wife rehabilitative alimony of $450 per month for two years, and alimony in futuro of $300 per month thereafter.[1]  Melvin Brown remarried in 1997.

---

[1]Our Supreme Court recently prohibited the courts from awarding both rehabilitative alimony and alimony in futuro in a single decree, reasoning that alimony in futuro is only appropriate if rehabilitation has proven to be unfeasible. *Crabtree v. Crabtree*, 16 S.W.3d 656 (Tenn. 2000).  However, such awards were acceptable in 1993.

On March 25, 2001, Mr. Brown filed a Petition to Modify the Final Decree. He claimed that Betty Brown's financial condition had improved in the ensuing eight years, to the extent that she no longer needed alimony, and he accordingly asked the court to eliminate his alimony obligation. Ms. Brown denied that her need for support had disappeared.

Prior to trial, Betty Brown sought discovery about her former husband's financial affairs, including the income of his current spouse. Ms. Brown's counsel also asked questions at Mr. Brown's deposition to determine if his petition was actuated by unhappiness on the part of his current wife about her husband continuing to provide support to the former wife. Mr. Brown responded by invoking his spousal privilege.

Melvin Brown subsequently moved the court for a protective order to prevent "annoying, embarrassing, and oppressive discovery" about his wife. The trial court granted the motion. The court's order prohibited Betty Brown from discovering any information relating to Mr. Brown's present wife or her family, and permitted Mr. Brown to redact any information which was not related to his own personal, individual finances from the financial documents he was required to provide.

A hearing on the husband's petition was conducted on February 7, 2002, during which both parties testified. Among other things, Betty Brown testified that she was now earning over $50,000 a year, while Melvin Brown testified that his annual income was over $40,000. At the conclusion of the proof, the trial judge announced that she was going to deny the Petition to Modify the Final Decree, because while both parties were doing better financially than they were at the time of divorce, the wife was entitled to retain the alimony "as one very small safety net" for the future. The court also ordered the husband to pay the wife's attorney fees in the amount of $1,800. This appeal followed.

## II. FORESEEABILITY

A grant of alimony in futuro remains within the jurisdiction of the court that awarded it, but may be modified only upon a showing of a substantial and material change in circumstances. Tenn. Code Ann. § 36-5-101(a)(1); *McCarty v. McCarty*, 863 S.W.2d 716 (Tenn. Ct. App 1992). Our courts have also stated that in order for a change in circumstances to be considered material, such a change must have been unforeseeable at the time of the original decree. *Sannella v. Sannella*, 993 S.W.2d 73 (Tenn. Ct. App. 1999); *Elliott v. Elliott*, 825 S.W.2d 87 (Tenn. Ct. App. 1991); *Seal v. Seal*, 802 S.W.2d 617 (Tenn. Ct. App. 1990).

The appellant criticizes this court-made requirement, noting that the support statute, Tenn. Code Ann. § 36-5-101, does not specifically mention foreseeability. He argues that it is an essentially meaningless standard, because almost any event can be considered foreseeable. We agree that if too broadly construed, the forseeability requirement can be used to deny modification petitions without sufficiently rigorous analysis of the changes relied upon by petitioners. It appears to us, however, that no one's life is static, that everyone undergoes changes over time, and that only those changes which were not anticipated by the court and were not factored into its original decree can justify a change in that decree.

In the present case, the trial court knew that Ms. Brown was a registered nurse, and that she hoped to return to work. The court accordingly fashioned an award in two parts: rehabilitative alimony for no more than two years to help carry Ms. Brown through her involuntary unemployment, and alimony in futuro "in the event she returns to work." The court went on to state that "this will last until her death or remarriage. If there is a change of circumstances then either party may petition the court to adjust the alimony."

Apparently, Ms. Brown earned between $30,000 and $40,000 prior to her disability. Since the court was probably aware that the pay scale for registered nurses has increased steadily over the years, it is at least arguable that her eventual increase in income to $50,000 was foreseeable, and was factored into its award. It appears to us, however, that even if the increase was unforeseeable, the court would still be justified in dismissing Mr. Brown's petition.

### III. RELATIVE ECONOMIC DISADVANTAGE

The appellant contends that this case is unique in the annals of Tennessee domestic law, because the wife now earns more than the husband, but insists that she is still entitled to receive alimony from him. He argues that since the bedrock statutory requirement for alimony is the economic disadvantage of one spouse relative to the other, Ms. Brown's income has rendered her ineligible for further support. We believe, however, that despite her income, Ms. Brown is still relatively disadvantaged.

The trial court noted that at the time of the parties' divorce, they were in difficult financial straits. Betty Brown, a registered nurse, had suffered an injury on the job. She was not working, but was drawing disability, and awaiting resolution of her workers' compensation claim. Melvin Brown was in the midst of a Chapter 13 bankruptcy, and was paying $800 a month out of his $2,400 net income for the benefit of his creditors.

The years immediately after the divorce were not easy for Betty Brown. The trial court awarded her the marital home, but ordered her to pay her husband $5,000 for his interest in the property. Since she had limited income, she fell behind on the mortgage payments. She had to refinance the house to meet her obligations (including a new roof and other expensive repairs) resulting in a larger mortgage payment. When she was able to return to work, Ms. Brown felt she had to take a second job, but all the pressures caused a nervous breakdown, leading to a further period of unemployment.

By the time of the hearing on the petition to modify, both parties had made substantial improvements in their financial positions. The testimony of the parties and their income and expense statements show that Betty Brown is working again, that she has paid off most of her debts, and that she is earning more than $50,000 per year. Melvin Brown, who is employed by a trucking firm, is earning more than $40,000 per year, and his expenses have substantially decreased. Not only has he emerged from bankruptcy, but because of his marriage he does not have responsibility for any rent or mortgage.

As we stated above, the appellant contends that the support statute only applies where the obligee spouse is at a relative economic disadvantage when compared to the obligor. *See* Tenn. Code Ann. § 36-5-101(d)(1). Mr. Brown argues that not only does Betty Brown earn more money than he does, but she owns her own home, while he owns no real estate, and lives in a house that was owned by his current wife prior to their marriage.

We note, however, that the income and expense statements filed by the parties show that Betty Brown is still paying a mortgage of $1,224 per month, which considerably reduces the amount of money she has available for other needs. Marvin Brown has no mortgage, and no housing expenses other than about $125 a month for electricity. Neither party appears to be an overly extravagant spender, but Ms. Brown's statement shows a monthly shortfall of about $470, while Mr. Brown's statement shows that his net income exceeds his expenses by $550, even after tithing $300 to his church and paying $300 in alimony.

The appellant argues that it is contrary to law for the trial court to take the income or resources of Mr. Brown's second wife into account when calculating his alimony obligation to his first wife. We agree that it would be unfair to add her income to his for that purpose. But we also believe that it would be unfair to give him credit for paying household expenses for which she has taken primary responsibility. It therefore appears to us that contrary to the arguments of the appellant, Betty Brown is still at an economic disadvantage relative to her former spouse.

## IV. NEED AND ABILITY TO PAY

Our courts have stated that the most important factors to take into account in determining alimony are the obligor's ability to pay and the need of the recipient. *Anderton v. Anderton*, 988 S.W.2d 675 (Tenn. Ct. App. 1998); *Lindsey v. Lindsey,* 976 S.W.2d 175 (Tenn. Ct. App. 1997); *Loyd v. Loyd*, 860 S.W.2d 409 (Tenn. Ct. App. 1993). It is apparent from the record that Mr. Brown has the ability to pay the modest amount of alimony ordered by the trial court. It is also apparent that Ms. Brown continues to be in need of alimony, despite the improvement in her income.

The appellant argues that Ms. Brown's need results from her voluntary assumption of debt. By this, he means her retention of the marital home, refinancing of the mortgage, and investment in necessary repairs. But Ms. Brown would be burdened with housing expenses no matter where she chose to live, and we do not believe that she should be penalized for attempting to keep the home where she lived and raised her children for twenty-five years. We therefore affirm the order of the trial court.

## V.

The order of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Melvin E. Brown.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.