IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 4, 2003 Session

# MICHAEL W. LAMBERSON v. KATHY SUE LAMBERSON

Appeal from the Circuit Court for Davidson County
No. 00D-1641      Muriel Robinson, Judge

No. M2002-02773-COA-R3-CV - Filed January 27, 2004

In this appeal, the ex-husband challenges the trial court's order denying his post-divorce petition to modify alimony and finding him in "technical contempt." We find that the proof is inadequate to establish willful efforts to defeat alimony obligations, that his change of employment was not voluntary and that a substantial and material change of circumstances has occurred, justifying some relief from the alimony obligation. The trial court did not err in holding the ex-husband to be in contempt. We reverse the judgment in part, affirm the judgment in part, and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed in Part, Affirmed in Part, and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, and FRANK G. CLEMENT, JR., JJ., joined.

Clark Lee Shaw, John David Moore, Nashville, Tennessee, for the appellant, Michael W. Lamberson.

David Lyle, Nashville, Tennessee, for the appellee, Kathy Sue Lamberson.

## OPINION

The Lambersons were divorced by court decree on June 11, 2001. Pursuant to that decree, Mr. Lamberson was ordered to carry life insurance in the amount of $250,000 with Mrs. Lamberson as the sole beneficiary of the policy. In addition, Mr. Lamberson was ordered to pay $1200 per month as alimony *in futuro*. At the time of the divorce Mr. Lamberson was employed by G & D America and earning approximately $50,000 per year. On October 10, 2001, Mr. Lamberson filed a petition to modify the alimony *in futuro* award. As grounds Mr. Lamberson alleged that on July 9, 2001 he was involuntarily terminated from G & D America due to a change in job description requiring substantial travel. The Petition further alleged that Mr. Lamberson had since found new employment with International Systems of America. Mr. Lamberson alleged that the change in employment subsequent to the divorce decree constituted a substantial and material change of

circumstances warranting an alimony reduction. Mrs. Lamberson filed an answer denying the material change in circumstances and countered with a petition for contempt founded on Mr. Lamberson's failure to pay the alimony *in futuro* directly to Mrs. Lamberson in a timely manner.

The trial court heard proof on the petitions on October 8, 2002, at which hearing only the parties testified. The uncontroverted testimony at trial established that, subsequent to the divorce, G & D America expanded its operations. In the course of that expansion, the position that Mr. Lamberson occupied at the time of the divorce was reorganized out of existence. G & D America offered Mr. Lamberson the opportunity to continue working for G & D America at his current wage of $17.50 per hour. However, that continued employment was conditioned upon Mr. Lamberson's agreement to work as a "roving employee" for G & D America. Mr. Lamberson refused to continue the employment and was thus terminated. Although he collected unemployment for a time, Mr. Lamberson obtained subsequent employment with International Systems of America, at a starting wage of $11.50 per hour. Shortly after starting this new position Mr. Lamberson was given a raise to $14.00. Mr. Lamberson did not provide any specific dates as to the cessation of his employment with G & D America, the beginning of his employment with International Systems of America or the time of the pay increase from the original wage of $11.50 to $14.00 per hour. The undisputed testimony shows that Mr. Lamberson, between June of 2001 and October 2002, experienced a net wage decrease of $3.50 per hour. Mr. Lamberson testified to the following attempts at obtaining employment in his chosen field:

A.    I went on the Internet and every place that I could - - through the Unemployment Commission here in town and I turned around and gave them my resume. So through the state employment agencies, I went through those. The attempt - for - hire agencies, I went through those. The Internet agencies, I went through those.
Q.    Just to straighten the record out, once you denied, turned down the position to rove, were you terminated?
A.    Yes, sir.
Q.    Have you found a job since then?
A.    Yes. I'm working for International Systems of America.
Q.    How much money per hour are you making now?
A.    Currently $14 an hour.
Q.    Now, have you tried to get a job making less money so you wouldn't have to pay as much alimony or attempt to do that?
A.    No.
Q.    Is this the best job you could find in Nashville, Tennessee?
A.    Yes.

Mr. Lamberson also testified to purchasing a pickup truck with $2000 down and payments of $169 a month.

For her part Mrs. Lamberson testified that since the divorce she has maintained her employment at United Way of Metropolitan Nashville, and that she continues to suffer from multiple sclerosis. She also testified to receiving an inheritance since the date of the decree in the amount of $100,000. After hearing the proof, the trial court made the following findings from the bench:

> THE COURT: You-all get ready for this ruling. The Court makes the finding that this was a contested divorce and Mr. Lamberson has been in this court many times contesting the orders of this Court. During the duration of the lawsuit, he petitioned the Court to reduce the pendente lite alimony. He set up on a course to terminate or modify the alimony from day one.
>
> The main issue in this case is Ms. Lamberson's health problems which made her in a situation of having a need for alimony. There has been absolutely no change of circumstances that this Court can find where this Court would terminate or modify the alimony. I will make the finding that Mr. Lamberson persists on petition after petition, costing both sides legal fees to undermine the order of this Court. The petition to reduce Ms. Lamberson's alimony is most respectfully denied.
>
> The proof shows that one month after the Final Decree was entered, Mr. Lamberson left his job, knowing of his obligation by the Final decree of this $1200 alimony obligation. It's not burdensome. He has the ability to command income to meet this payment. He voluntarily reduced his income even though he had the wherewithal to take the other job, to maintain his income, knowing his obligation under the decree to his former wife.
>
> She still suffers from MS. There's no cure for that. If anything, her condition will get worse. It's amazing to this Court that she can maintain this job at United Way and it's to Mr. Lamberson's benefit that she continues to be able to do that. That's not going to always be and then there will be an adjustment to this alimony.
>
> He's just recently purchased a truck at the cost of $10,000, trading in his old one. He paid $2,000 down. The proof shows that he refuses to pay the alimony payment on time. The Court has dealt with that, in that from this point on, this $1200 will be paid where she gets it by the fifth day of each and every month or Mr. Lamberson will be in contempt of the orders of this Court.

These findings from the bench were reiterated in the written order of the court entered October 2, 2002, to wit:

> The proof shows that one month after the final decree was entered, Mr. Lamberson left his job, knowing of his obligation by the final decree of this $1200 per month alimony obligation. It is not burdensome. He has the ability to command income to meet this payment. He voluntarily reduced his income even though he had the wherewithal to take the other job, to maintain his income, knowing his obligation under the decree to his former wife.

Ms. Lamberson still suffers from MS. There's no cure for that, if anything, her condition will get worse. It is amazing to this Court that she can maintain this job at United Way and it is to Mr. Lamberson's benefit that she continues to be able to do that. That is not going to always be and then there will be an adjustment to this alimony. Ms. Lamberson relies on the alimony. Her expenses show that she has need.

Mr. Lamberson has the ability to pay. He just recently purchased a truck at the cost of $10,000, trading in his old one. He paid $2,000 down. He voluntarily reduced his income to avoid the payment of alimony.

The proof shows that he refuses to pay the alimony payment on time. The Court finds that Mr. Lamberson is in technical contempt of court in that he has not paid alimony on time, but will not assess any punishment at this time. Mr. Lamberson agreed before the court that from this point on, this $1200 shall be paid where Ms. Lamberson gets it by the fifth day of each and every month or Mr. Lamberson will be in contempt of the orders of this Court.

The inheritance spoken of is her separate property. It yields a very small amount of interest, so it scarcely increases her income at all, but the principal would be needed if something were to happen to Mr. Lamberson. It is her separate property and it should remain available to her should she become disabled and cannot continue to work at United Way.

Mr. Lamberson appeals from the order of the trial court arguing that the trial court erred as a matter of law in refusing to reduce the alimony, in finding Mr. Lamberson in technical contempt.

Appellant argues that when considering the propriety of a modification of spousal support, the court should look not to the voluntary nature of the change in employment status, but to whether that change was "willful." This assertion points to the very horns of the dilemma which divided the Tennessee Supreme Court in *Bogan v. Bogan*, 60 S.W.3d 721 (Tenn.2001). The starting point of any discussion concerning spousal support must be the consideration of the need of the spouse and the obligor's ability to pay the support. *See Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn.Ct.App.1991). *See also* Tenn. Code Ann. § 36-5-101(a)(1)(Supp.2000). In *Bogan*, the supreme court addressed the particular problem of an obligor choosing to retire prior to age 65. Judge Barker, writing for the majority, held that,

[W]hen an obligor's retirement is objectively reasonable, it does constitute a substantial and material change in circumstances--irrespective of whether the retirement was foreseeable or voluntary--so as to permit modification of the support obligation. However, while bona fide retirement after a lifetime spent in the labor force is somewhat of an entitlement, an obligor cannot merely utter the word "retirement" and expect an automatic finding of a substantial and material change in circumstances. Rather, the trial court should examine the totality of the circumstances surrounding the retirement to ensure that it is objectively reasonable. The burden of establishing that the retirement is objectively reasonable is on the party

seeking modification of the award, *cf. Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn.Ct.App.1990), and the trial court's determination of reasonableness will not be reversed on appeal absent an abuse of discretion, *see, e.g., Crabtree*, 16 S.W.3d at 360. Although we decline to confine this inquiry to consideration of a list of factors, in no case may a retirement be deemed objectively reasonable if it was primarily motivated by a desire to defeat the support award or to reduce the alimony paid to the former spouse.

*Bogan*, 60 S.W.3d at 729.

Tennessee Code Annotated section 36-5-101(d)(1)(A), as construed in *Storey v. Storey*, 835 S.W.2d 593 (Tenn.Ct.App.1992) and in *Watters v. Watters*, 22 S.W.3d 817 (Tenn.Ct.App.1999), relies heavily upon earning capacity as the yardstick for measuring without regard to the circumstances surrounding actual employment. The strict application of *Storey* and *Watters* must be tempered by the decision of the Supreme Court in *Bogan v. Bogan*, 60 S.W.3d 721 (Tenn.2001).

It is well settled that a court may not modify a spousal support award unless it first finds that a substantial and material change in circumstances has occurred since the entry of the original support decree. *Bogan* at 727-8; *See* Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 2000). Generally, a change in circumstances is considered to be "material" when the change (1) "occurred since the entry of the divorce decree ordering the payment of alimony," Watters v. Watters, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) and (2) was not "anticipated or [within] the contemplation of the parties at the time they entered into the property settlement agreement," *Id.; see also McCarty v. McCarty,* 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); *Elliot v. Elliot,* 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991). Moreover, a change in circumstances is considered to be "substantial" when it significantly affects either the obligor's ability to pay or the obligee's need for support. *See Bowman v. Bowman,* 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

The general rule in Tennessee with regard to modification of support awards has long been that "obligations voluntarily assumed are not proper to be considered as changed circumstance[s] to reduce support payments otherwise owed." *Dillow v. Dillow,* 575 S.W.2d 289, 291 (Tenn. Ct. App. 1978). Prior to *Bogan*, this court applied this traditional standard to deny modification of a support award when an obligor voluntarily acted in a way that reduced his or her income available for spousal support. *See Sannella v. Sannella,* 993 S.W.2d 73 (Tenn. Ct. App. 1999). In *Bogan*, our Supreme Court thoroughly examined voluntariness and change of material circumstance in the context of retirement and whether it was willful. The Court reasoned that when an obligor seeks bona fide retirement, as opposed to mere willful underemployment, application of our traditional rules concerning modification of support agreements leaves much to be desired. *Bogan* at 728.

Absent some tragedy or combination of unfortunate circumstances, retirement from further employment in the workforce is always voluntary and foreseeable because, at some point, every worker will eventually retire. Moreover, taken to its logical extreme, this standard would force an obligor to work until physically

-5-

incapable of doing so merely to avoid the allegation that he or she was "voluntarily" avoiding spousal obligations. While the traditional standards regulating modification of support agreements should usually be applied to motivate parties to provide for such contingencies in their dissolution agreement, strict application of these standards in the retirement context can work unreasonable hardships. *Cf. Sifers v. Sifers,* 544 S.W.2d 269, 269-70 (Mo.Ct.App.1976) (denying modification when obligor "voluntarily" retired, even though he was 62, had a malignant kidney removed, and was unable to find employment in the industry in which he had worked all his life). At some point, parties must recognize that "[j]ust as a married couple may expect a reduction in income due to retirement, a divorced spouse cannot expect to receive the same high level of support after the supporting spouse retires." *In re Marriage of Reynolds,* 63 Cal.App.4th 1373, 74 Cal.Rptr.2d 636, 640 (Ct.App.1998). *Bogan* at 728 -729.

The *Bogan* court went to hold "when an obligor's retirement is objectively reasonable, it does constitute a substantial and material change in circum-stances--irrespective of whether the retirement was foreseeable or voluntary--so as to permit modification of the support obligation." *Id*. at 729. The Supreme Court further reasoned that while retirement is somewhat of an entitlement, an obligor cannot merely declare "retirement" and expect an automatic finding of a substantial and material change in circumstances, rather, the trial court should "examine the totality of the circumstances surrounding the retirement to ensure that it is objectively reasonable." *Id*.

Although our Supreme Court declined to confine the examination to consideration of a list of factors, it held that in no case may a retirement be deemed objectively reasonable if it was primarily motivated by a desire to defeat the support award or to reduce the alimony paid to the former spouse. This record fails to state whether the trial court examined the totality of the circumstances surrounding the termination of Mr. Lamberson's employment at G & D America.

It should be further noted that even if Mr. Lamberson is able to establish that the termination of his employment was objectively reasonable, and therefore constitutes a substantial and material change in circumstances, he is not necessarily entitled to an automatic reduction or termination of his obligations.

> [T]he statute permitting modification of support awards contemplates that a trial court has no duty to reduce or terminate an award merely because it finds a substantial and material change in circumstances. *See* Tenn. Code Ann. § 36-5-101(d)(2). Instead, the change in conditions resulting from retirement merely allows the obligor to demonstrate that reduction or termination of the award is appropriate. *Cf. McFadden,* 563 A.2d at 184; *Silvan,* 632 A.2d at 530. Accordingly, when assessing the appropriate amount of modification, if any, in the obligor's support payments, the trial court should consider the factors contained in Tennessee Code Annotated section 36-5-101(d)(1) to the extent that they may be relevant to the

inquiry. *See, e.g., Watters,* 22 S.W.3d at 821; *Seal,* 802 S.W.2d at 620; *Threadgill v. Threadgill,* 740 S.W.2d 419, 422-23 (Tenn.Ct.App.1987).

*Bogan* at 730.

Based upon the record before the Court, Lamberson is entitled to some relief in relation to the alimony award.

To the extent that the findings of the trial court may be construed to find that Mr. Lamberson is willfully underemployed in a scheme to reduce or terminate his alimony, such finding is not supported by the record. Willfulness, however, is not a necessary element in determining whether or not voluntary change of employment by the obligor resulting in reduced income is a basis for modifying alimony. This is the very issue drawn in *Watters*, 22 S.W.3d 817 (Tenn.Ct.App.1999), wherein Presiding Judge Crawford, joined by Judge Farmer, rejected willfulness as a necessary element and Special Judge Hayes, in dissent, held willfulness to be a necessary element. Application to appeal was denied by the supreme court. Added to the analysis by *Bogan* is the modification that the controlling question is not whether Mr. Lamberson's decision to leave his employment was voluntary but rather whether or not the decision was objectively reasonable. *See Bogan*, 60 S.W.3d at 735.

Just as an objectively reasonable decision to retire constitutes a substantial and material change of circumstances, so a decision to reject involuntary servitude under circumstances where continued employment is conditional upon added duties, responsibilities and inconveniences should constitute a substantial and material change in circumstance. Fatal to both retirement and change of employment is a determination that, in fact, the decision to retire or to change employment is motivated by a desire to reduce or terminate alimony. Such a finding as to Mr. Lamberson is not supported by the record.

It is well to note that the relief available to Mr. Lamberson on remand may be limited in time due to the fact that at the time of the hearing in this case on appeal he was fast approaching the level of pay that he enjoyed with G & D America.

The "technical contempt" has no defined meaning and a party is either in contempt or not in contempt. The finding of contempt was based on the ill-advised action of Appellant in sending his alimony checks to his ex-wife's former attorney rather than to her as ordered by the court. Contempt was also based on failure of Appellant to make timely alimony payments. The record is clear that he offended in both respects. It cannot be said that the trial court erred in holding him to be in contempt. All he has to do, however, to avoid penalty for contempt, is to pay his alimony to his former wife and to pay it on a timely basis.

The judgment of the trial court is reversed as to the finding that no substantial and material change of circumstances has occurred, affirmed as to the finding of contempt, and the case is remanded for further proceedings in conformity with this opinion.

Costs of the cause are assessed equally against the parties.


_____
WILLIAM B. CAIN, JUDGE