# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
January 14, 2015 Session

## A.C. ODOM v. J.B. ODOM

**Appeal from the Circuit Court for Hamilton County**
**No. 05D1369      Jacqueline S. Bolton, Judge**

---

**No. E2014-01049-COA-R3-CV-FILED-APRIL 14, 2015**

---

This appeal arises from a petition to terminate alimony.  A.C. Odom ("Husband") filed a petition to terminate his alimony obligation to his ex-wife J.B. Odom ("Wife") in the Circuit Court for Hamilton County ("the Trial Court").[1]  Husband's petition was based on his retirement from his career as an orthopedic surgeon.  The Trial Court found that there had not been a substantial or material change in circumstances and denied Husband's petition to terminate alimony.  Husband appealed to this Court.  We find and hold that Husband's retirement was objectively reasonable, that it constitutes a substantial and material change in circumstances, that Wife is no longer economically disadvantaged relative to Husband, and Husband's alimony obligation to Wife is terminated henceforth. We reverse the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

Lauren G. Strange-Boston, Knoxville, Tennessee, for the appellant, A.C. Odom.

John P. Konvalinka and Jillyn M. O'Shaughnessy, Chattanooga, Tennessee, for the appellee, J.B. Odom.

---

[1] The parties refer to themselves in their briefs as Husband and Wife despite being divorced for several years, and so shall we for purposes of convenience.

# OPINION

## Background

Husband and Wife married in 1970 and were divorced by the Trial Court in June 2007. The Trial Court divided the parties' significant marital estate roughly equally and required Husband to pay Wife alimony in futuro in the amount of $10,000 per month. In August 2012, Husband filed a petition to terminate alimony. Husband's pending retirement from the practice of orthopedic surgery was his basis for his request for relief from alimony payments. This case was tried in May 2014.

Husband testified first. Husband was 65 at the time of trial, and had remarried since the divorce. Husband stopped performing surgery in August 2012. Husband retired officially as of December 2012 at age 64 after 35 years of surgical practice. Husband was an orthopedic surgeon for the Center for Sports Medicine. Husband described his decision to retire as taking place gradually over a period of time. Husband stated that he began having physical problems with his left arm at the end of 2011. Husband had difficulty gripping and feeling things. Husband also testified that he had suffered from Raynaud's disease, a disease that prevents blood from flowing into the far digits causing numbness. Husband, however, attributed his more recent problems to a disc in his neck associated with the time he had broken his neck. Husband testified:

> The symptoms that I was having, like I said, gradually increased over a period of time. They were increasing from the middle to the end of 2011 into the beginning of 2012, significantly such that I was - - I was looking at my abilities, which were decreasing, and at that point I was not putting anyone at risk. I was able to retire - - I mean, I was able to operate. But if I continued, I was afraid that I was going to jeopardize the safety of my patients if I was unable to do what I needed to do to operate.

Husband went on to describe the intricate nature of orthopedic surgery, a procedure requiring fine dexterity. Regarding his health problems, Husband testified to increasing back problems in 2013. By April 2013, Husband simply was unable to move. Husband saw Dr. Scott Hodges, who performed surgery on Husband in May 2013 and removed a large extruded disc. According to Husband, this cured his pain but he was no longer able to completely straighten his fingers or have a firm grip in his left hand. Before the surgery, Husband also had seen Dr. Robert Mastey. Husband described some of his present limitations as of trial:

Okay. Pinch grip is important when tying shoes. I have great difficulty tying my shoes. I have great difficulty buttoning my buttons. The small buttons, for instance, on my collar, my wife had to button those this morning. I can't - - I don't have the fine dexterous motion or the pinch grip in order to get a small button. I can do fairly well on big buttons, but it's difficult to do the big buttons as well.

Husband testified as to when surgeons typically retire. Husband testified that his mentor had practiced surgery until around age 90. This, however, was not typical of Husband's experience. Husband stated that he did not know of many orthopedic surgeons practicing beyond the age of 64. Continuing his testimony, Husband testified that his retirement was in no way motivated by a desire to cut off Wife's alimony. In retirement, Husband enjoyed woodworking as a hobby, although his health problems sometimes interfered.

Husband had enjoyed a high income from his surgical practice, sometimes earning upwards of $500,000 or more. The parties stipulated that, as of trial, the parties had a substantially similar net worth of about $3,700,000 each. Husband then proceeded to describe some of the rental property he is involved in. Husband testified that his net investment income at First Tennessee Bank in 2013 was $19,439.23. Husband stated that he was going to draw Social Security at age 66 from November 2014 in the amount of $2,641 per month. Husband also owned two rental houses. Historically, they had rented for $750 and $700 per month, respectively. Neither house was rented as of trial. Husband testified to a monthly mortgage bill on his house of $3,137.01 that he would pay off in eight to ten years. Husband asserted his current total monthly expenses were $22,348.41, including the $10,000 alimony obligation. Husband also paid $101 per month on life insurance to insure the alimony. Husband's current wife, Gloria, received a pension from Food Handlers of about $150 per month. Husband stated that his current wife cleans house, cooks meals, and manages the gardens.

On cross-examination, Husband testified that his home was about 6,400 square feet in area. Regarding the timing of his decision to retire and seek relief from alimony payments, Husband testified:

I am a physician, and I'm aware of things that happen to my body and things that happen to me. I'm an observer of health care matters.

If I were having problems and since I was having problems at the end - - sometime at the end of 2011, increasing in 2012, those are problems

that I knew that I couldn't deal with for a long time, and so I didn't want to put patients at risk. I did not want to place their safety at risk. For crying out lou[d], I knew what was happening to me. I didn't need another physician telling me that I was having problems.

Husband acknowledged having an all-told average income of greater than $500,000 per year from a variety of sources from 2007 through 2012. Husband also testified to the difficulty he would have in trying to resume work in postoperative care, specifically citing his inability even to remove stitches.

Jonathan Ransom ("Ransom"), a certified financial planner with First Tennessee Bank, testified as to Husband's future financial prospects should he continue to be liable for $10,000 in monthly alimony to Wife. The gist of Ransom's testimony was that, given the likely rate of return on Husband's investments, Husband was likely to run out of money by age 80 to his mid-80s. On cross-examination, Wife raised several issues with Ransom's conclusions, including failure to make certain tax adjustments with the report and failure to take into account Husband's significant real estate and business ownership interest.

Wife testified. Wife, 64 and unmarried, testified that she lives in a 2,400 square foot residence that she acquired in 2007. Wife has no indebtedness on the home. Wife has a high school education. During the marriage, Wife did not work outside the home. Continuing her testimony, Wife testified that she has two adult children from her marriage to Husband. Wife's monthly need excluding non-recurring expenses was stated at $12,047.93. Wife testified that she lives on her alimony.

On cross-examination, Wife was questioned about her expenses since the divorce. Wife acknowledged her clothing expense had, on average, tripled. Wife testified that she had increased her tithe-giving to a bit more than $1,000 per month. Wife, now with grandchildren as well as daughters-in-law, had tripled her gift-giving. Wife also testified to overpaying certain bills such as gas. When questioned about these expenses, Wife testified: "I am asking [Husband] to pay what is fair after 38 years of marriage and after his having the affair, not me." Wife described her retirement funds as a "nest egg." Wife acknowledged that the approximately $3,000,000 she held in combined liquid assets was enough to support her.

In May 2014, the Trial Court entered an order denying Husband's petition to terminate alimony, stating, *inter alia*:

The parties were divorced after 38 years of marriage pursuant to a Memorandum Opinion entered by this Court on June 7, 2007. In the June 7, 2007 Memorandum Opinion, the Court ordered the plaintiff to pay periodic alimony to the defendant in the amount of $10,000 per month. At the 2014 hearing, the parties had substantially equal net worth, which was stipulated.

In December 2012, Plaintiff retired from practicing medicine at the age of 64. The plaintiff has had health problems with his hands and stated that those problems interfered with his ability to work. Plaintiff alleges that this forced retirement is the reason he has petitioned the Court to terminate or substantially reduce his alimony obligation. Testimony reflects, however, that the problems Plaintiff experienced with his hands did not become severe until April 2013, after he chose to retire.

After hearing the parties' testimony and reviewing all relevant documents in the case, the Court finds that there has not been a substantial or material change in circumstances pursuant to Tennessee Code Annotated Section 35-5-121. Therefore, the plaintiff's Motion to Terminate Alimony Obligation is DENIED.

Husband filed a timely appeal to this Court.

### Discussion

Although not stated exactly as such, Husband raises two issues on appeal: 1) whether the Trial Court erred in finding that there had not been a substantial and material change in circumstances that warranted review of Husband's alimony obligation; and, 2) whether the Trial Court erred by not terminating Husband's alimony obligation.

We first address whether the Trial Court erred in finding that there had not been a substantial and material change in circumstances that warranted review of Husband's alimony obligation. Our Supreme Court set out the standard of review to be applied in cases involving a request for modification of a spousal support order stating:

Because modification of a spousal support award is "factually driven and calls for a careful balancing of numerous factors," *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989), a trial court's decision to modify support payments is given "wide latitude" within its range of discretion, *see Sannella v. Sannella*, 993 S.W.2d 73, 76 (Tenn. Ct. App.

1999). In particular, the question of "[w]hether there has been a sufficient showing of a substantial and material change of circumstances is in the sound discretion of the trial court." *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999) (citations omitted). Accordingly, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *see also Goodman v. Goodman*, 8 S.W.3d 289, 293 (Tenn. Ct. App. 1999) ("As a general matter, we are disinclined to alter a trial court's spousal support decision unless the court manifestly abused its discretion."). When the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them. *See, e.g., Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *see also* Tenn. R. App. P. 13(d).

*Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).

In order to obtain a modification of a spousal support award, the party seeking modification must show a substantial and material change of circumstance. Tenn. Code Ann. § 36-5-121(a) (2014). Prior to *Bogan*, courts dealing with the issue of whether a retirement could constitute a substantial and material change of circumstance applied the rule that "obligations voluntarily assumed are not proper to be considered as changed circumstance[s] to reduce support payments otherwise owed…." *Bogan*, 60 S.W.3d at 728 (quoting *Dillow v. Dillow*, 575 S.W.2d 289, 291 (Tenn. Ct. App. 1978)). However, in *Bogan*, our Supreme Court held:

that when an obligor's retirement is objectively reasonable, it does constitute a substantial and material change in circumstances -- irrespective of whether the retirement was foreseeable or voluntary -- so as to permit modification of the support obligation. However, while bona fide retirement after a lifetime spent in the labor force is somewhat of an entitlement, an obligor cannot merely utter the word "retirement" and expect an automatic finding of a substantial and material change in circumstances. Rather, the trial court should examine the totality of the circumstances surrounding the retirement to ensure that it is objectively reasonable. The burden of establishing that the retirement is objectively reasonable is on the party seeking modification of the award, *cf. Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990), and the trial court's

-6-

determination of reasonableness will not be reversed on appeal absent an abuse of discretion, *see, e.g., Crabtree*, 16 S.W.3d at 360.

\* \* \*

However, even when an obligor is able to establish that a retirement is objectively reasonable, and therefore that it constitutes a substantial and material change in circumstances, the obligor is not necessarily entitled to an automatic reduction or termination of his or her support obligations. As evidenced by its permissive language, the statute permitting modification of support awards contemplates that a trial court has no duty to reduce or terminate an award merely because it finds a substantial and material change in circumstances. *See* Tenn. Code Ann. § [36-5-121(a)[2]]. Instead, the change in conditions resulting from retirement merely allows the obligor to demonstrate that reduction or termination of the award is appropriate. *Cf. McFadden*, 563 A.2d at 184; *Silvan*, 632 A.2d at 530. Accordingly, when assessing the appropriate amount of modification, if any, in the obligor's support payments, the trial court should consider the factors contained in Tennessee Code Annotated section [36-5-121(i)][3] to the extent that they may be relevant to the inquiry. *See, e.g., Watters*, 22 S.W.3d at 821; *Seal*, 802 S.W.2d at 620; *Threadgill v. Threadgill*, 740 S.W.2d 419, 422-23 (Tenn. Ct. App. 1987).

*Bogan*, 60 S.W.3d at 729-30 (footnote omitted).

Husband, therefore, has the burden to prove initially that there was a substantial and material change in circumstances for purposes of terminating his support obligation to Wife. In light of the *Bogan* opinion, our inquiry on this subject centers on whether Husband's retirement was objectively reasonable and thus constituted a substantial and material change in circumstances.

Husband retired in December 2012 at the age of 64. Husband had been practicing orthopedic surgery for 35 years. The evidence in the record on appeal reveals no motive on the part of Husband to evade his spousal support obligation through retirement. Rather, the evidence overwhelmingly shows that Husband retired on account of growing health problems.

---

[2] Our statutory scheme has been amended since the release of *Bogan*. The language as discussed in the quotation from *Bogan* previously appeared at Tenn. Code Ann. § 36-5-101(d)(2). We have substituted the current citation for ease of reference.

[3] As discussed in footnote 2, we again substitute the current citation for ease of reference.

Against these facts, Wife argues essentially that Husband's condition was not as debilitating as he suggested. Wife points out, among other things, that Husband had only one appointment for pain before his actual retirement; that Husband did not believe that prior to retirement he had put any of his patients at risk; that Husband admitted that, following neck surgery, his pain was cured and his Raynaud's symptoms were under control; and, that neither Dr. Mastey nor Dr. Hodges testified that Husband was incapable of performing surgery.

We find Wife's argument unavailing. Even setting aside Husband's health problems, Husband spent over three decades practicing orthopedic surgery. Husband was 64 years old at retirement. It strikes us as quite reasonable that a person in his mid-sixties having performed surgeries for so many years might have an understandable and objectively reasonable desire to retire. When one then factors in the impact of Husband's significant health problems—including numbness in the hands— on his ability to perform surgeries one cannot help but see potential hazards to his patients in requiring him to carry on performing delicate surgical procedures. Wife argues that Husband could carry on in some capacity doing postoperative care. We reject this argument as the evidence does not support it. We simply do not accept Wife's apparent contention that Husband, an orthopedic surgeon by profession, must scrap indefinitely for whatever work he still might be able to undertake without jeopardizing patients with his health problems. We find and hold that the evidence overwhelmingly supports the finding that Husband's retirement was objectively reasonable, and that Husband successfully proved a substantial and material change in circumstances. We reverse the Trial Court on this issue.

Our determination that a substantial and material change in circumstances exists does not settle the matter. Such a determination does not automatically lead to a reduction or termination of spousal support. We now address Husband's second issue of whether the Trial Court erred by not terminating his alimony obligation.

We must look to the relevant factors for determining spousal support obligations codified as follows:

(i) In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121 (i) (2014).

"[T]he two most important considerations in modifying a spousal support award are the financial ability of the obligor to provide for the support and the financial need of the party receiving the support." *Bogan*, 60 S.W.3d at 730. As stipulated at trial, these parties have a substantially equal net worth of around $3,700,000 each. Husband's ability to pay has been reduced by his retirement. Meanwhile, Wife's needs appear to be more than met by her assets. Wife no longer is economically disadvantaged relative to Husband given Husband's retirement and the parties' substantially equal significant net worth of roughly $3,700,000 each. Considering all the relevant statutory factors, we find no basis for Husband's alimony obligation to continue under the evidence contained in the record. These parties are in a roughly equal financial position now, each with significant assets to draw upon sufficient to meet his or her needs. Given the undisputed evidence in the record before us, we find no reason to remand this case for additional hearing, and we terminate the alimony altogether.

Husband asks us to terminate his alimony obligation retroactive to his retirement at the end of November 2012. We decline to extend our ruling that far. Exercising our discretion, we hold that Husband's alimony obligation is terminated going forward from the date of this Court's opinion and judgment. We reverse the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is reversed, Husband's alimony obligation to Wife is terminated henceforth, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellee, J.B. Odom.

_____
D. MICHAEL SWINEY, JUDGE