# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### October 27, 2015 Session

## MIMI HIATT v. KEVIN L. HIATT

**Appeal from the Circuit Court for Blount County**
**No. E21482     Tammy M. Harrington, Judge**

---

### No. E2015-00090-COA-R3-CV-FILED-JANUARY 28, 2016

---

This appeal concerns post-divorce matters.  Mimi Hiatt ("Wife") and Kevin L. Hiatt ("Husband") divorced.  Wife some years later filed a motion to modify the final decree of divorce in the Circuit Court for Blount County ("the Trial Court") seeking to increase Husband's child support and alimony obligations.  Husband, in turn, filed a motion to recover claimed overpayments he made on the marital residence because Wife had transferred it to a trust.  The Trial Court found, among other things, that Wife was voluntarily underemployed and declined to increase her spousal support for that reason.  The Trial Court also ruled that Wife's divestment of the marital residence constituted a "sale" under the Marital Dissolution Agreement ("the MDA") and awarded a judgment to Husband for payments he made on the mortgage after Wife's transfer of the marital residence to the trust.  Wife appeals to this Court.  We hold that Wife's transfer of the marital residence to a trust constituted a sale per the MDA, and we affirm the Trial Court in its award to Husband for overpayment.  However, we find that Wife proved a substantial and material change in circumstances, and we remand for the Trial Court to determine an increase in Wife's alimony in light of this change and all relevant factors. We find further that the Trial Court erred in declining to award Wife her attorney's fees relative to alimony.  As a final matter, we award Wife her attorney's fees incurred on appeal related to the alimony issue, and remand for the Trial Court to determine Wife's reasonable attorney's fees related to the alimony issue on appeal.  The judgment of the Trial Court is affirmed, in part, and, reversed, in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed, in Part, and, Reversed, in Part; Case Remanded

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., and NORMA MCGEE OGLE, SP. J., joined.

Martin W. Cash, Jr., Kingston, Tennessee, for the appellant, Mimi Hiatt.

Jerrold L. Becker, Knoxville, Tennessee, for the appellee, Kevin L. Hiatt.

**OPINION**

**Background**

Husband worked in the airline industry. Wife had worked as a flight attendant many years ago, but went on to raise the parties' children and run a special events facility business. After over 20 years of marriage, the parties were divorced in 2007. Under the MDA, Wife received the marital residence and Husband was to pay the mortgage payment on the residence until Wife remarried or sold the residence. The parties agreed that Husband would pay Wife at least $1,500 per month in alimony. The MDA also contained a provision for adjusting Wife's alimony 2.5% should Husband enjoy an increase in wages. Wife did not remarry, but in 2009, she divested herself of all right to the residence which she transferred to a trust, naming her mother as the trustee. Husband learned of this transfer over a year and a half later. Husband stopped making mortgage payments as a result.

In January 2014, Wife filed a motion to modify final decree of divorce, seeking to increase Husband's child support and alimony obligations. For his part, Husband filed in July 2014 a motion to recover overpayment for the mortgage payments he made on the marital residence after Wife's transfer to the trust without his knowledge. The matter went to a hearing. The evidence relevant to the issues on appeal was that the parties enjoyed a high standard of living. During the marriage, Wife served as the primary caregiver of the parties' minor children. At the time of the divorce, Wife earned no income and Husband earned some $8,796.67 per month. At the time of the hearing in the instant appeal, Wife had most recently earned $650 per month, while Husband was now earning up to $23,500 per month. After the hearing, the Trial Court increased Husband's child support and awarded Wife attorney's fees related to that issue. Husband does not appeal these decisions by the Trial Court.

The Trial Court ruled, however, that Wife was voluntarily underemployed and declined to increase her spousal support for that reason. The Trial Court also ruled that Wife's divestment of the marital residence constituted a "sale" under the MDA and awarded a judgment to Husband for payments he made on the mortgage after Wife's transfer of the marital residence to the trust. The Trial Court stated, in relevant part, in its December 2014 final order:

> 1. The transfer of the marital residence by the Plaintiff to the Trust constituted a sale. As such, the Defendant's mortgage obligations were terminated as of that act. Accordingly, since April 25, 2009, the Defendant

has overpaid in the amount of Two Hundred Twenty-Eight Thousand One Hundred Fifty-Nine Dollars and Fifteen Cents ($228,159.15) and he is entitled to a judgment against the Plaintiff for said amount.

2. The Plaintiff's Petition for Increase in Alimony is denied as she has been underemployed throughout the entire time period.

3. The Petition for increase in child support is granted and the child support obligation by the part of the Defendant is increased to Two Thousand One Hundred ($2,100.00) Dollars per month. The increase shall begin as of May 1, 2014. Therefore, there is an arrearage resulting from the difference the Defendant paid pursuant to the previous order and the increased amount. That difference is Seven Thousand Five Hundred ($7,500.00) Dollars.

4. The Plaintiff's Petition for Attorney's Fees is granted as to the amount of One Thousand Thirty-Three Dollars and Fifty Cents ($1,033.50) with regard to the child support request.

5. Court costs are taxed equally between the parties.

The marital residence eventually was foreclosed. Wife was paying for a new residence as of the hearing. Wife timely filed an appeal to this Court.

### Discussion

Although not stated exactly as such, Wife raises the following issues on appeal: 1) whether the Trial Court erred in granting Husband a judgment for overpayment on the marital residence mortgage; 2) whether the Trial Court erred in denying Wife an increase in alimony; 3) whether the Trial Court erred in declining to award Wife all her attorney fees; 4) whether the Trial Court erred in assigning one-half of court costs to Wife; and, 5) whether Wife is entitled to an award of attorney's fees incurred on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Certain issues in this appeal are reviewed under the abuse of discretion standard. In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard at length, stating:

-3-

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No

Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d at 212.

*Beecher*, 312 S.W.3d at 524-25.

We first address whether the Trial Court erred in granting Husband a judgment for overpayment on the marital residence mortgage. With respect to this issue, the question hinges on whether Wife's transfer of the marital residence to the trust constituted a "sale" under the MDA, thus ending Husband's obligation to pay on the mortgage under the MDA. Wife's argument is centered on the fact that no money was paid or promised to Wife in exchange for the transfer to the trust. Husband argues in response that Wife's conception of a "sale" is too narrow. In support, Husband cites to the Tennessee Supreme Court in the *Waddle* case, to wit:

The word "sale," used in the statutory phrase "contract for the sale of lands, tenements, or hereditaments," has long been broadly interpreted to mean any alienation of real property, including even a donation of realty. *Bailey*, 143 S.W. at 1127. This Court has previously explained that such a broad construction is consistent both with the purposes of the Statute of Frauds and with the common law understanding of the term:

The word "sale" in our statute of frauds (section 3142, Shannon's Code) means alienation, and an action on a parol contract made by the owner binding him to give or donate land to another, would, we think, fall within the terms of that statute. A contrary holding would open a wide door to perjury and fraud, and defeat, as we think, one of the purposes of the statute.

....

Plaintiff insists that a parol donee of land does not, in legal contemplation, stand upon a parity with a parol vendee.... We cannot assent to this proposition.... At common law the word "purchase" in its largest and most extensive sense is defined by Littleton to be the possession of lands and

-5-

tenements which a man hath as by his own act or agreement, and not by descent by any of his ancestors or kindred. In this sense it is contradistinguished from acquisition by right of blood, and includes every other method of coming to an estate but merely that of inheritance, wherein the title is vested in a person, not by his own act or agreement, but by the single operation of law. And says Mr. Blackstone: "Purchase, indeed, in its vulgar and confined acceptation, is applied only to such acquisitions of land as are to be obtained by way of bargain and sale for money, or some other valuable consideration; but this falls far short of the legal idea of purchase, for if I give land freely to another, he is in the eyes of the law a purchaser, and falls within Littleton's definition, for he comes to the estate by his own agreement; that is, he consents to the gift."

*Bailey*, 143 S.W. at 1127-28 (footnote added)

In the century since *Bailey*, the Tennessee General Assembly has not amended the Statute of Frauds to ascribe a more narrow meaning to the word "sale." Relying on a legal dictionary, Ms. Waddle asks this Court to construe "sale" as meaning "[t]he transfer of property or title for a *price ... in money paid or promised*." *See Black's Law Dictionary* 1364 (8th ed.2004) (emphasis added). However, Ms. Waddle has failed to provide any persuasive rationale for overruling *Bailey*, and we decline to do so. Applying *Bailey*, we conclude that the Court of Appeals erred by holding that the Statute of Frauds does not apply to this settlement agreement.

While this Court has not previously decided whether the Statute of Frauds applies to settlement agreements requiring the transfer of an interest in real property, Tennessee courts have suggested in dicta that such settlement agreements are subject to the Statute of Frauds. *See Ledbetter*, 163 S.W.3d at 686 n. 2 ("We note from the record that the proposed marital dissolution agreement contemplated transfer of title to real property, possibly implicating the application of the Statute of Frauds. However, because neither party has raised the issue nor briefed it, we pretermit it." (citation omitted)); *Carroway v. Anderson*, 20 Tenn. (1 Hum.) 61, 62-63 (1839) (holding that the Statute of Frauds does not require the pleadings to allege the existence of a writing showing "that the defendant would pay the plaintiff a certain price per acre for all the land included within certain specified limits" in order to settle a lawsuit, but commenting that, "to give

validity to [such] an agreement ..., a writing is necessary"); *Ballew v. Ballew*, No. W2005-00337-COA-R3-CV, 2006 WL 709198, at \*4 n. 1 (Tenn. Ct. App. Mar. 22, 2006) (suggesting that the Statute of Frauds applied to the divorce settlement agreement that required one spouse to sell his share of the marital home to the other spouse, but refusing to apply the Statute of Frauds because neither party raised it in the trial court).

Consistent with the rule applied by a majority of jurisdictions, we hereby hold that the Statute of Frauds applies to any settlement agreement requiring a transfer of an interest in real property.

*Waddle v. Elrod*, 367 S.W.3d 217, 224-25 (Tenn. 2012) (footnotes omitted).

For her part, Wife argues that the commonly understood definition of sale should prevail with that being wherein money is exchanged. In our judgment, Wife's concept of sale is indeed too narrow. The most reasonable, non-strained interpretation of the MDA is that Husband's obligations to Wife on the mortgage payments would continue only so long as she held the marital residence. It is illogical as well as unsupported by the record that Husband ever had intended to continue making mortgage payments on the residence once Wife no longer possessed it. The same manifest rationale underpinning the MDA's provision that Husband cease making payments upon a sale of the residence by Wife for money is applicable to a scenario whereby the residence was transferred to a trust. In each situation, Wife alienated the residence in the same material fashion. By divesting herself of the marital residence, Wife sold the property for purposes of the MDA. The Trial Court did not err in awarding Husband a judgment for overpayments.

We next address whether the Trial Court erred in denying Wife an increase in alimony. With respect to modifications of alimony, this Court has stated:

To modify an alimony award, there must be a substantial and material change in circumstances. T.C.A. § 36-5-121(a) (2005); *accord Bogan*, 60 S.W.3d at 727-28 (citing T.C.A. § 36-5-101(a)(1) (Supp. 2000)). "This change in circumstances must have occurred since the original award." *Brewer v. Brewer*, 869 S.W.2d 928, 935 (Tenn. Ct. App. 1993) (citing *Jones v. Jones*, 659 S.W.2d 23, 24 (Tenn. Ct. App. 1983)). A "substantial" change is one that "significantly affects either the obligor's ability to pay or the obligee's need for support." *Bogan*, 60 S.W.3d at 728 (citing *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991)). A change is material if it was not "anticipated or [within] the contemplation of the parties at the time" of the original divorce. *Id.* (citing *Watters v.*

*Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992); *Elliot v. Elliot*, 825 S.W.2d 87, 90 (Tenn. Ct. App. 1991)).

The party seeking modification bears the burden of proving that a substantial and material change in circumstances has occurred. *Freeman v. Freeman*, 147 S.W.3d 234, 239 (Tenn. Ct. App. 2003) (citing *Seal v. Seal*, 802 S.W.2d 617, 620 (Tenn. Ct. App. 1990)). Once a substantial and material change in circumstances has been established, the trial court is under no duty to modify the award; the party seeking modification must demonstrate that a modification is warranted. *Bogan*, 60 S.W.3d at 730. In "assessing the appropriate amount of modification, if any, in the obligor's support payments, the trial court should consider the factors contained in" Tennessee Code Annotated § 36-5-121(i) "to the extent that they may be relevant to the inquiry." *Id.* (citing *Watters*, 22 S.W.3d at 821; *Seal*, 802 S.W.2d at 620; *Threadgill v. Threadgill*, 740 S.W.2d 419, 422-23 (Tenn. Ct. App. 1987)).

\*\*\*

Even if there is a substantial and material change in circumstances, the party seeking modification must demonstrate that it is warranted, considering the factors set out in Tennessee Code Annotated § 36-5-121(i), to the extent that they are relevant in the modification proceeding. *See Bogan*, 60 S.W.3d at 730.

\*\*\*

In the case at bar, at the time of the divorce, Husband was not able to afford alimony that would permit Wife to have a standard of living comparable to the parties' standard during their marriage. The circumstances have clearly changed. Tennessee's General Assembly has stated as a policy matter that our courts, in setting spousal support, should set the support at a level that allows the economically disadvantaged spouse a standard of living that is "reasonably comparable to the standard of living enjoyed during the marriage or to the post-divorce standard of living ... available to the other spouse," considering the statutory factors and the equities between the parties. T.C.A. § 36-5-121(c)(2) (2005). This applies to modification proceedings as well as the initial divorce proceedings. Now that Husband can better afford to pay alimony that provides Wife a standard

-8-

of living that more closely approximates the standard during the parties' marriage, considering the statutory factors and the equities between the parties, he should be required to do so.

Therefore, we must conclude that the trial court's decision not to modify Husband's alimony obligation in light of the very substantial increase in his income amounts to an abuse of discretion. The award of alimony *in futuro* is modified to $10,000 per month, retroactive to the date on which Wife filed her petition to modify the alimony award. We note that the original alimony award was set to decrease by $1000 per month every four years, until its termination twelve years from the date of the decree. In light of the evidence that Wife has struggled to establish a career after her long absence from the workforce, as well as the fact that her child support will decrease and terminate as the two children reach majority in 2010 and 2014, the alimony amount shall remain constant until the termination date. The termination date for Husband's alimony obligation remains unchanged from the termination date set in the original decree of divorce.

*Wiser v. Wiser*, 339 S.W.3d 1, 12, 14-15, 17-18 (Tenn. Ct. App. 2010) (footnotes omitted).

Wife points to Husband's ostensible massive, some threefold increase in income. Husband argues in response, among other things, the following: (1) Wife placed herself in a difficult position by giving up a perfectly useable house to go live in Georgia; (2) Wife could have worked, certainly during the time her school age child was in school; (3) Wife has shown the ability to work, she simply has not—she also ran her business into the ground; and, (4) Husband's significant increase in income has been offset by payments he had to make on the mortgage and the foreclosure of Wife's business, for which he was a guarantor.

While the Trial Court found that Wife is underemployed, the inescapable fact is that Husband's earning capacity has increased greatly since the divorce. This is true irrespective of Wife's business failures or poor financial decisions. The significant increase in Husband's income constitutes a substantial and material change in circumstances, and the Trial Court erred in declining to so find.

The Trial Court referenced only one factor in reaching its decision not to increase the alimony award. That one factor was the Trial Court's finding that Wife is underemployed and has been so basically the entire time since the divorce. We take no issue with that finding by the Trial Court, and the Trial Court's finding of Wife's

underemployment remains intact. However, that single finding should not have ended the analysis by the Trial Court. Wife's underemployment was simply one of many factors, including the statutory factors, that the Trial Court should have considered in arriving at its determination of whether or not the amount of alimony should have been increased, and if so, to what amount. The Trial Court erred when it apparently considered only Wife's underemployment as being dispositive of the requested alimony increase. This was error by the Trial Court. The preponderance of the evidence entitles Wife to an increase in her alimony. The question remains, however, as to the amount of the increase which is a decision best decided initially by the Trial Court. We remand this case to the Trial Court to apply all the relevant factors in light of this substantial and material change in circumstances to determine the increase in the alimony due Wife.

We next address whether the Trial Court erred in declining to award Wife all her attorney fees. Specifically, the Trial Court declined to award Wife her attorney's fees relative to the alimony issue. Wife has prevailed on appeal in proving a substantial and material change in circumstances and that an increase in the alimony amount to be determined by the Trial Court on remand is required. We, consequently, find it appropriate that she be awarded her attorney's fees related to her request to modify alimony. On remand, the Trial Court is to determine and award Wife her reasonable attorney's fees in requesting a modification of alimony.

We next address whether the Trial Court erred in assigning one-half of court costs to Wife. This is an issue that falls within the discretion of the Trial Court. Given our resolution of the issues of alimony modification in Wife's favor and the mortgage overpayment in Husband's favor, and in consideration of all relevant facts, we find no abuse of discretion by the Trial Court in its allocation of court costs.

The final issue we address is whether Wife is entitled to an award of attorney's fees incurred on appeal. Considering all relevant factors, mindful of our analysis as to the issue of alimony, and in the exercise of our discretion, we award Wife her attorney's fees incurred on appeal relative to the alimony issue. We remand for the Trial Court to determine and award to Wife her reasonable attorney's fees incurred on appeal relative to the alimony issue.

In conclusion, we affirm the Trial Court in its award to Husband of a judgment for overpayment on the mortgage obligations. Wife's transfer of the marital residence to a trust constituted a sale under the MDA, and Husband no longer was required to make mortgage payments following that transfer. With respect to alimony, we find that Husband's significant increase in earning power constitutes a substantial and material change in circumstances and that a preponderance of the evidence supports an increase in the alimony amount. We, therefore, remand for the Trial Court to modify

Husband's alimony obligation to Wife in light of that change and all other relevant factors. On remand, the Trial Court is to determine reasonable attorney's fees for Wife relative to the issue of requesting a modification of alimony as well as her attorney's fees incurred on appeal related to the alimony issue. The Trial Court's decision as to court costs stands. The judgment of the Trial Court is affirmed, in part, and, reversed, in part.

## Conclusion

The judgment of the Trial Court is affirmed, in part, and, reversed, in part, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed equally against the Appellant, Mimi Hiatt, and her surety, if any, and Appellee, Kevin L. Hiatt.

_____
D. MICHAEL SWINEY, CHIEF JUDGE